UNITED STATES DISTRICT COURT

Northern District of California

BUENA ESCANO,

            Plaintiff,
   v.

AURORA LOAN SERVICES, LLC, et al.,

            Defendants.
_____/

No. C 11-6720 MEJ

**ORDER RE DEFENDANTS' MOTION TO DISMISS (DKT. NO. 13)**

## INTRODUCTION

On November 22, 2011, Plaintiff Buena Escano initiated this action in Contra Costa County Superior Court against Defendants Aurora Loan Services, Homecomings Financial Network, and Cal-Western Reconveyance Corporation. Compl., Dkt. No. 1, Ex. 1. Plaintiff's Complaint asserted 11 causes of action — the majority of which were based on state law — alleging that Defendants were liable for their wrongful conduct in connection with her 2006 home refinance in which she obtained two loans for a total of $747,000.00, including cash out proceeds of $42,000.00.[1] Compl. ¶ 17. Plaintiff's Complaint did include several causes of action which were predicated on federal law. She claimed that Defendants violated (1) the Real Estate Settlement Procedures Act (RESPA), codified under 12 U.S.C. §§ 2601 et. seq., by failing to respond to her qualified written request (QWR); and (2) the Truth in Lending Act (TILA), codified under 15 U.S.C. §§ 1601 et. seq., by

---

[1] The Court does not discuss the entirety of Plaintiff's factual allegations because they are not material to the disposition of this matter. For the same reason, the Court does not consider Defendants' request for judicial notice.

failing to provide her with accurate disclosures regarding her loans, which also entitled her to rescind the loans. Compl. ¶¶ 102-10, 125-42. Based on these federal claims, Defendants removed the action to this Court on December 29, 2011.[2] Dkt. No. 1 at 2-3. Defendants then moved to dismiss Plaintiff's Complaint, but this Motion was denied as moot because while it was pending Plaintiff filed her First Amended Complaint (FAC). Dkt. Nos. 11 and 12. The FAC contains substantially the same allegations as Plaintiff's original Complaint, especially with respect to her federal claims. Defendants have now moved to dismiss the FAC on multiple grounds, including that each of Plaintiff's causes of action fail as a matter of law pursuant to Federal Rule of Civil Procedure (FRCP) 12(b)(6). Dkt. No. 13. The Court begins its analysis by addressing this FRCP 12(b)(6) argument with respect to Plaintiff's federal causes of action since they are the only federal questions presented by her lawsuit.[3]

## LEGAL STANDARD

A court may dismiss a complaint under Federal Rule of Civil Procedure (FRCP) 12(b)(6) when it does not contain enough facts to state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual

---

[2] Defendants (two of which are California corporations) only removed this action based on federal question jurisdiction and consequently the Court does not need to consider any issues with respect to diversity jurisdiction.

[3] Because the analysis of Plaintiff's federal claims is dispositive, the Court does not address Defendants' other arguments in favor of dismissing the FAC.

2

allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

## DISCUSSION

Under RESPA (Plaintiff's fourth cause of action in her FAC), servicers of federally related mortgage loans are required to abide by certain disclosure obligations. *Morris v. Bank of America*, 2011 WL 250325, at *4 (N.D. Cal. Jan. 26, 2011) (citing 12 U.S.C. § 2605(b)). Among these obligations is the duty to respond to a QWR submitted by a borrower. *Id.* (citing 12 U.S.C. § 2605(e)). A QWR is "(1) a written correspondence, (2) that identifies the name and account of the borrower, and (3) states the reasons why the borrower believes the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." *Zhang v. Countrywide Home Loans*, 2012 WL 1245682, at *4 (N.D. Cal. Apr. 13, 2012) (citing 12 U.S.C. § 2605(e)(1)(B)). "A servicer must acknowledge receipt of a QWR within twenty days of receiving it, and must provide to the borrower within sixty days of receiving the QWR a written explanation of the reasons why the account is or is not in error." *Id.* (citing 12 U.S.C. §§ 2605(e)(1)(A), 2605(e)(2)). Pursuant to these statutes, Plaintiff alleges that she sent a letter to Defendants on August 17, 2011 that qualified as a QWR. FAC ¶ 93. Although Defendants responded to this QWR in nine days, Plaintiff claims this response was improper because it only included blanket and boilerplate objections. *Id.*

In moving to dismiss Plaintiff's RESPA claim, Defendants first contend that it is conclusory and vague, noting that Plaintiff did not even attach Defendants' response to the QWR that is alleged

3

1  to be inadequate. Dkt. No. 13 at 21. The Court is not persuaded by this argument since Plaintiff's
2  allegation that Defendants' only response to her QWR were boilerplate objections — which on a
3  motion to dismiss must be must accepted as true and construed in a light most favorable to Plaintiff
4  — is sufficient at this stage of the proceedings. *See* FAC ¶ 93.

5  Defendants next argue that Plaintiff's correspondence did not require a response because it
6  did not qualify as a QWR. According to Defendants, a QWR is not valid if it fails to specify why a
7  borrower's account is in error. Dkt. No. 13 at 21 ("A request for information to a servicer that does
8  not provide a specification why the borrower thinks the account is in error is not a proper QWR, and
9  the servicer need not respond."). This argument is disingenuous. As explained above, a QWR will
10 be valid if it explains why the borrower's "account is in error *or provides sufficient detail to the*
11 *servicer regarding other information sought by the borrower*." 12 U.S.C. § 2605(e)(1)(B)(ii)
12 (emphasis added). Accordingly, a QWR satisfies RESPA if borrowers meet the statute's alternative
13 requirement of specifically explaining what they are seeking. *See Shum v. Experian Info. Solutions*,
14 2012 WL 1376979, at *1. Here, Plaintiff's QWR, attached to her FAC, does just that by specifically
15 requesting what she is seeking from Defendants (e.g., "the current interest rate on this account," "the
16 previous servicer of the loan," "the current holder of the note," etc.). Dkt. No. 11-1 at 26. Plaintiff's
17 correspondence was therefore a valid QWR.

18 Defendants' last argument, however, persuades this Court that Plaintiff's RESPA claim
19 should be dismissed. Defendants contend that the claim is not actionable because Plaintiff has not
20 alleged any damages as a result of their failure to properly respond to her QWR. Dkt. No. 13 at 22
21 ("Alleging a breach of RESPA duties alone is not enough. A plaintiff must, at a minimum, allege
22 that the breach resulted in actual damages.") (quoting *Hutchinson v. Delaware Sav. Bank FSB*, 410
23 F.Supp.2d 374, 382-83 (D.N.J. 2006)); *see also Allen v. United Fin. Mortg. Corp.*, 2010 WL
24 1135787, at *5 (N.D. Cal. Mar. 22, 2010) (noting that it is a plaintiff's pleading obligation to "point
25 to some colorable relationship between his injury and the actions or omissions that allegedly
26 violated RESPA"). In her Opposition, Plaintiff contends that her FAC sufficiently alleges that
27 Defendants' failure to fully respond to her QWR "made it impossible for Plaintiff to make adequate
28

payments on the loan" and caused her to suffer damages such as substantial negative amortization, lost equity, and late charges. Dkt. No. 17 at 17. The problem with Plaintiff's argument is that she sent her QWR to Defendants on August 17, 2011. This was almost five months after Defendants recorded a Notice of Default on her property (March 23, 2011) and nearly one month after Defendants recorded a Notice of Trustee's Sale (June 27, 2011). FAC ¶¶ 32 and 33. Accordingly, Defendants' failure to properly respond to Plaintiff's QWR has no connection to Plaintiff's alleged damages since by the time the QWR was sent Plaintiff had already defaulted and foreclosure proceedings had begun. Other courts in this District have interpreted analogous RESPA damages allegations to be insufficient for similar reasons. *See, e.g.*, *Lawther v. Onewest Bank,* 2010 WL 4936797, at *6-7 (N.D. Cal. Nov. 30, 2010) ("Worse, Lawther sent the QWR months *after* issuance of the Notice of Default and Notice of Trustee Sale or, in other words, after events directly connected to the emotional harm he alleges. Accordingly, Lawther has not pleaded actual harm casually connected to the alleged RESPA violation."); *Morris*, 2011 WL 250325, at *5 (finding that the plaintiffs' RESPA claim did not sufficiently plead damages because their suffering "negative credit reporting and the filing of foreclosure" had no nexus to the defendant's failure to acknowledge receipt of the QWR or delay in responding to it). Because Plaintiff's damages have no connection with the inadequate QWR response from Defendants, her RESPA cause of action is DISMISSED WITH PREJUDICE.[4]

Plaintiff's other federal claim (sixth cause of action in the FAC) is based on her allegation that Defendants violated TILA in connection with her 2006 loans. The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). TILA "requires creditors to provide borrowers with clear and accurate disclosures

---

[4] The Court does not grant Plaintiff leave to amend. For one, Defendants' first Motion to Dismiss made the same arguments as here and Plaintiff chose not to amend her allegations with respect to her RESPA damages. Moreover, amendment would be futile since Plaintiff incurred her damages stemming from the initiation of foreclosure proceedings before sending her QWR.

of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (citations omitted). A violation of TILA imposes liability on the creditor and entitles the borrower to damages as well as the ability to rescind the corresponding loan. *Zhang*, 2012 WL 1245682, at *5.

Defendants' only argument with respect to Plaintiff's TILA claim is that it is time-barred. An action for damages under TILA must be brought within one year from the date of the violation. *Id.* at *7 (citing 15 U.S.C. § 1640(e)). This limitations period, however, may be suspended — under appropriate circumstances — by equitable tolling if a borrower did not discover or did not have a reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. *Id.* (citing *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986)). Unlike actions for damages, rescission claims under TILA have a three year statute of limitations. *Id.* at *8 ("The right to rescind under TILA has a limitations period that 'expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first,' even if the creditor never made the required disclosures.") (citing 15 U.S.C. § 1635(e)). Thus, actions for rescission have a longer limitations period than suits for damages, but this limitations period cannot be tolled under any circumstances. *Id.* at *9 (citing *Beach*, 523 U.S. at 419).

In her Opposition, Plaintiff argues that her TILA claim is not time-barred because she only recently discovered Defendants' failure to provide her with the proper disclosures in 2006. Dkt. No. 17 at 18 ("Because Plaintiff was not given the disclosures initially, Plaintiff had no reason to review the disclosures until during the loan modification process, and Plaintiff began contacting Defendant immediately upon discovery of the fraudulent disclosures."). But, this equitable tolling argument cannot apply to a TILA rescission claim because, as explained above, such a claim cannot be tolled for any reason. Because Plaintiff obtained her loans in 2006 and did not file her Complaint until 2011, TILA's three year statute of limitations for rescission claims applies and Plaintiff's claim is time-barred.

On the other hand, Plaintiff's equitable tolling argument could excuse her failure to file her TILA damages claim within the one year statute of limitations. For tolling to be proper, however, it

6

would have to be reasonable under Plaintiff's particular circumstances for her not to have discovered or had a reason to discover that Defendants' disclosures did not comply with TILA by November 22, 2010 (one year before she initiated this action).  Plaintiff cannot do this.  She argues that she was not given the disclosures initially and did not discover them to be deficient until she began working on her loan modification.  Even if this is true, Plaintiff began working on her loan modification in October 2010.  *See, e.g.*, FAC ¶ 29 (alleging that in October 2010 Plaintiff applied for a loan modification that was denied).  Accordingly, by her own allegations, Plaintiff discovered that Defendants' disclosures did not meet TILA's requirements in October 2010 and did not file her lawsuit until November 2011.[5]  This does not comply with TILA's one year statute of limitations and the Court therefore DISMISSES WITH PREJUDICE Plaintiff's TILA cause of action.

Plaintiff's remaining causes of action are based on state law.[6]  When the federal claims that

---

[5] Plaintiff's Opposition cites to her allegation in the FAC that she "did not discover the fraudulent facts, (i.e., inflated income and assests [sic], and deflation of debt) used by defendants to qualify her for the loan until Plaintiff reviewed the original loan documents in the past few months for the preparation for an application a [sic] loan modification." FAC ¶ 152.  If Plaintiff is referring to a more recent loan modification than the one in October 2010, this would still not justify the tolling of the statute of limitations for her claim.  Equitable tolling would not be appropriate under Plaintiff's circumstances because it is unreasonable for a borrower who has had issues with her loans since February 2009 (FAC ¶ 22) — and has attempted to obtain several loan modifications since that time — to either willfully avoid obtaining her disclosures or to not discover that there may be problems with them.  *See Allen v. United Fin. Mortg. Corp.*, 2010 WL 1135787, at *1 (N.D. Cal. Mar. 22, 2010) ("Where equitable tolling may be applicable to a federal claim, the claim accrues ... upon awareness of the actual injury, not upon awareness that this injury constitutes a legal wrong.") (citations and quotations omitted).

[6] To the extent that Plaintiff's eighth cause of action for rescission is based on the allegation that Defendants violated TILA, this claim is also DISMISSED since the TILA claim is time-barred.  Plaintiff also asserts a cause of action alleging that Defendants violated the "Unfair and Deceptive Practices Act." FAC ¶¶ 160-68.  Plaintiff does not identify which statute this claim falls under and has not opposed Defendants' Motion to Dismiss with respect to this claim.  Dkt. No. 13 at 25 ("To the extent plaintiff attempts to state a claim under section 5 of the Federal Trade Commission Act, that act does not include a private right of action.  To the extent she attempts to assert a cause of action under California's 'little FTC act,' this is entirely duplicative of her fifth cause of action for violation of California *Business and Professions Code* § 17200.") (citations omitted).  Accordingly, this cause of action is also DISMISSED.

served as the basis for a federal court's jurisdiction are eliminated by a motion to dismiss, the Court may decline to exercise supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c) (The court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction"); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  In declining to exercise supplemental jurisdiction, the Court considers that this matter — originally filed in Contra Costa County Superior Court — now consists of only state law claims and that the Court has not devoted a significant amount of judicial resources to this action since this is the first substantive motion that has required the Court to issue a decision.  Accordingly, Plaintiff's remaining state law causes of action are REMANDED back to the Contra Costa County Superior Court.  *See Carnegie-Mellon*, 484 U.S. at 353  ("remand may best promote the values of economy, convenience, fairness, and comity").

**IT IS SO ORDERED.**

Dated: June 7, 2012

_____
Maria-Elena James
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28